# EXHIBIT B

E-FILED | 11/4/2025 4:07 PM
CC-19-2025-C-272
Jefferson County Circuit Clerk
Tina Renner

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

**CHRISTOPHER CODERRE as Parent
and Next Friend of M.C., a minor,**

      **Plaintiff,**

**v.**                            **Civil Action No. 25-C-__**

**JACQUELINE ADRIENNE BARRETT;
NICHOLAS PINEROS-MOLANO;
ANGELA PINEROS;
CARLOS PINEROS;
NESTOR DAVID MOLANO;
ADM CAPITAL GROUP, LLC d/b/a
OFF LEASE MOTORS LLC;**

      **Defendants;**

**and**

**USAA GARRISON PROPERTY AND CASUALTY
INSURANCE COMPANY**

      **Notice Defendant.**

## COMPLAINT

Plaintiff Christopher Coderre, as Parent and Next Friends of M.C., a minor,

through counsel M. Alexandra Hazel and Skinner Law Firm, avers and says as follows:

### JURISDICTION AND VENUE

1.      Plaintiff Christopher Coderre ("Mr. Coderre") is a resident of Charles

Town, WV.

2.      Infant M.C. is a resident of Charles Town, WV.

3.      Mr. Coderre is Infant M.C.'s father.

EXHIBIT B

4.       Defendant Jacqueline Adrienne Barrett ("Defendant Barrett") is a resident of Ranson, WV.

5.       By information and by belief, Defendant Nicholas Pineros-Molano ("Defendant Pineros-Molano") is a resident of Charles Town, WV, living with his mother (Angela Pineros) and father (Carlos Pineros).

6.   By information and by belief, Defendant Nestor David Molano ("Defendant Molano") is a resident of Prince William County, Virginia, and he is Defendant Pineros-Molano's uncle.

7.       By information and by belief, Defendant Molano is the member and manager of Defendant ADM Capital Group, LLC, d/b/a Off Lease Motors, LLC.

8.       Defendant ADM Capital Group, LLC d/b/a Off Lease Motors, LLC ("Defendant Off Lease Motors") is a limited liability company registered with the Virginia State Corporation Commission under Entity Identification Number S7411111 and having a registered office address in Stafford, VA.

9.       Notice Defendant USAA Garrison Property and Casualty Insurance ("USAA") provides underinsured motorist insurance coverage to the Plaintiff and will be responsible for any judgment in excess of the liability insurance policies of the Defendants.

10.      The motor vehicle crash that is the subject of this Complaint occurred in Jefferson County, West Virginia.

EXHIBIT B

11.     Jurisdiction and venue in Jefferson County are appropriate because Defendants Barrett, Pineros-Molano, A. Pineros and C. Pineros all reside in Jefferson County, and the tort occurred in Jefferson County, West Virginia.

**FACTS**

12.     All previous paragraphs are restated and hereby incorporated by reference.

13.     On February 10, 2025, Defendant Pineros-Molano was driving from his parents' house in Charles Town and traveling to Martinsburg to watch a high school basketball game.

14.     M.C. was the rear seat passenger in the vehicle operated by Defendant Pineros-Molano.

15.     At approximately 6:50 p.m., Defendant Barrett was driving a black 2005 Chevrolet Pickup Truck eastbound on Charles Town Road approaching the intersection of Wiltshire Road.

16.     Simultaneously, Defendant Pineros-Molano was driving westbound on Charles Town Road towards the intersection with Wiltshire Road.

17.     By information and by belief, Defendant Barrett proceeded straight through the intersection of Charles Town Road and Wiltshire Road traveling the opposite direction from Defendant Pineros-Molano.

18.     By information and by belief, the light governing Defendant Pineros-Molano transitioned from a green circle to a yellow circle.

19.     By information and by belief, the light governing Defendant Barrett transitioned from a green circle to a yellow circle.

3

20.    By information and by belief, Defendant Barrett proceeded straight through the intersection on the yellow light.

21.    By information and by belief, Defendant Pineros-Molano simultaneous to Defendant Barrett proceeding straight through the yellow light attempted to make a left turn through the intersection on a yellow light.

22.    By information and by belief, Defendant Pineros-Molano turned left into Defendant Barrett's truck, resulting in a significant collision.

23.    The force of the collision caused Infant M.C. serious and significant injuries that required extensive medical treatment.

24.    By information and by belief, in the time around on February 10, 2025, Defendant Pineros-Molano resided with his parents, Defendants A. Pineros and C. Pineros, in Charles Town, West Virginia.

25.    By information and by belief, in the time around February 10, 2025, Defendant Pineros-Molano also resided with his uncle, Defendant Molano, in Prince William County, Virginia, while Defendant Pineros-Milano worked for his uncle's company, Defendant Off Lease Motors.

26.    By information and by belief, Defendant Pineros-Molano worked for Defendant Off Lease Motors, appearing in commercials advertising Defendant Off Lease Motors, working as a salesman, and presumedly also driving cars for Defendant Off Lease Motors.

27.    By information and by belief, prior to the incident giving rise to this Complaint, Defendant Molano permitted Defendant Pineros-Molano to borrow cars

4

EXHIBIT B

belonging to Defendant Off Lease Motors to drive home to his parents' residence in Charles Town, WV.

28.     By information and by belief, on February 10, 2025, the 2016 Toyota Camry being driven by Defendant Pineros-Molano was a vehicle Defendant Molano permitted Defendant Pineros-Molano to borrow from Defendant Off Lease Motors drive home to his parents' residence in Charles Town, WV.

29.     While the 2016 Toyota Camry being driven by Defendant Pineros-Molano on February 10, 2025, had a Virginia temporary tag naming Defendant Pineros-Molano under "Purchaser's Name," the tag had a swooping "D" above the "Dealer's Representative's Signature," which is presumedly Defendant Molano's signature.

30.     The vehicle operated by Defendant Pineros-Molano had a Temporary Certificate ("temporary tag") affixed.

31.     The temporary tag is issued to Defendant Pineros-Molano.

32.     The temporary tag has a swooping "D" written on the line designated for the "Dealer's Representative's Signature," which is, upon information and belief, the signature of Defendant Molano.

5

33.    The temporary tag on the vehicle stated: "Virginia law states that a motor vehicle liability policy must be issued by a company licensed to do business in Virginia and provides at least minimum coverage as required by law."

34.    The temporary tag on the vehicle operated by Defendant Pineros-Molano had a box checked indicating, "[t]his vehicle is insured by a policy that meets the above requirements."

35.    By information and by belief, Defendant Molano checked the box indicating the vehicle was insured by a policy that met the requirements of Virginia law; however, there was no insurance on the 2016 Toyota Camry.

36.    By information and by belief, Defendant Molano drafted a "Bill of Sale" indicating Defendant Off Lease sold Defendant Pineros-Molano the 2016 Toyota Camry.

**BILL OF SALE / BUYER'S ORDER**

| Dealer/Seller Name and Address | Buyer/Co-Buyer Name(s) and Address(es) | |
|---|---|---|
| Off Lease Motors | Nicholas Andres Pineros-Molano | |
| | 147 Pommel Lane | |
| 3869 Richmond Hwy STE 105 | Charles Town, WV 25414 | |
| Stafford, VA 22554 | (304) 839-7167 | |
| Phone (703) 291-5820 | | |
| Fax    (571) 465-6484 | | |
| Info@TheOffLease.com | | |
| Date  1/16/2025 | Stock No. 518723 | Salesperson  David Molano |
| App No.  9484 | Contract No.  9484 | |

37.    Defendant Molano is listed as the Salesperson of the Camry.

38.    On said Bill of Sale, there is a section titled "Insurance Information" which states, "No Liability Insurance Included," and said section goes on to state, "Buyer has arranged insurance on the motor vehicle."  However, the spaces for the "Buyer's Insurance Company" and "Policy No." are blank.

Insurance Information

## No Liability Insurance Included.

Buyer has arranged insurance on the motor vehicle.
Insurance Company
Policy No.

39.     There was no insurance on the Camry.

40.     By information and by belief, Defendant Molano failed to abide by Virginia law in ensuring the motor vehicle had a liability policy issued by a company licensed to do business in Virginia that provided at least minimum coverage as required by law.

41.     By information and by belief, on previous occasions, Defendant Molano permitted Defendant Pineros-Molano to use vehicles from Defendant Off Lease Motors for the convenience of driving from Defendant Molano's residence in Virginia, where Defendant Pineros-Molano resided part-time to the home of Defendant Pineros-Molano's parents in West Virginia, where Pineros-Molano resided the rest of the time.

42.     By information and by belief, Defendant Pineros-Molano had not actually purchased the Camry and was instead operating the 2016 Toyota Camry as a "loaner" with the express or implied permission of Defendant Molano.

43.     By information and by belief, Defendant Pineros-Molano was operating the 2016 Toyota Camry on February 10, 2025, with the express or implied permission of Defendant Off Lease Motors.

44.     By information and by belief, Defendant Molano had knowledge, or should have known, that Defendant Pineros-Molano had a history of dangerous driving as evidenced by the following:

EXHIBIT B

49. Prior to the incident that gives rise to this Complaint, Defendant Pineros-Molano exhibited a reckless disregard for the safety of others as he was charged in Prince William County in case number GT24070575 with the Class 1 misdemeanor of Reckless Driving by Speed (80mph/40mph zone) on December 21, 2024, while he was driving a 2012 Honda bearing license plate number 56028X.

50.  By information and by belief, Defendant Pineros-Molano was charged a mere ten (10) days later in Prince William County in case number GT25003846 with Speeding (74mph/40mph zone) on December 31, 2024, while he was driving a 2012 Honda bearing license plate number 56028X.

45.       By information and by belief, despite Defendant Pineros-Molano being charged with two serious speeding offenses in quick succession, Defendant Molano still allowed Defendant Pineros-Molano to use his vehicles for his own convenience.

46.       By information and by belief, Defendant Off Lease Motors knew or should have known about its employee, Defendant Pineros-Molano, receiving two serious speeding offenses in quick succession.

47.       By information and by belief, despite Defendant Pineros-Molano being charged with two serious speeding offenses in quick succession, Defendant Off Lease Motors still allowed Defendant Pineros-Molano to use its vehicles for his own convenience.

**COUNT I – Negligence of Defendant Barrett**

51.       All previous paragraphs are restated and hereby incorporated by reference.

52.     Defendant Barrett had a duty to all other motorists, including Infant M.C., to follow the rules of the road.

53.     Defendant Barrett had a duty to act reasonably while operating a motor vehicle.

54.     Defendant Barrett had a duty to avoid colliding with other vehicles.

55.     Defendant Barrett had a duty to maintain control of her vehicle.

56.     Defendant Barrett had a duty to maintain an appropriate lookout at all times while driving.

57.     Defendant Barrett had a duty to yield the right of way.

58.     Defendant Barrett had a duty to drive an appropriate speed given the conditions.

59.     Defendant Barrett had a duty to obey traffic signals.

60.     Defendant Barrett had a duty to drive without distraction from mobile phones and other electronic devices.

61.     By information and by belief, Defendant Barrett proceeded through a yellow light as she drove eastbound on Charles Town Road at the intersection of Wiltshire Road.

62.     By information and by belief, Defendant Barrett should have stopped at the yellow light and not proceeded through the intersection.

63.     Defendant Barrett breached these duties and was negligent and grossly negligent and engaged in willful and wanton conduct.

EXHIBIT B

64.    Defendant Barrett's negligent and grossly negligent acts were the proximate cause of the collision between the vehicles and of the injuries sustained by the Infant M.C.

## COUNT II – Negligence of Defendant Pineros-Molano

65.    All previous paragraphs are restated and hereby incorporated by reference.

66.    Defendant Pineros-Molano had a duty to all other motorists, including Infant M.C., to follow the rules of the road.

67.    Defendant Pineros-Molano had a duty to act reasonably while operating a motor vehicle.

68.    Defendant Pineros-Molano had a duty to avoid colliding with other vehicles.

69.    Defendant Pineros-Molano had a duty to maintain control of his vehicle.

70.    Defendant Pineros-Molano had a duty to maintain an appropriate lookout at all times while driving.

71.    Defendant Pineros-Molano had a duty to yield the right of way.

72.    Defendant Pineros-Molano had a duty to drive an appropriate speed given the conditions.

73.    Defendant Pineros-Molano had a duty to obey traffic signals.

74.    Defendant Pineros-Molano had a duty to drive without distraction from mobile phones and other electronic devices.

75.    Defendant Pineros-Molano breached these duties and was negligent and grossly negligent and engaged in willful and wanton conduct.

EXHIBIT B

76.    Defendant Pineros-Molano's negligent and grossly negligent acts were the proximate cause of the collision between the vehicles and of the injuries sustained by the Infant M.C.

### COUNT III – Negligence of Defendant Molano

77.    All previous paragraphs are restated and hereby incorporated by reference.

78.    By information and by belief, while Defendant Molano provided a Virginia Temporary Tag and Bill of Sale showing Defendant Pineros-Molano was the purchaser of the 2016 Toyota Camry, yet this vehicle actually belonged to Defendant Molano and was loaned to Defendant Pineros-Molano for the convenience of driving back to his residence in West Virginia.

79.    By information and by belief, Defendant Molano had a duty to all other motorists, including M.C., to ensure his nephew, Defendant Pineros-Molano, was a safe driver before permitting him to use vehicles belonging to Defendant Molano.

80.    By information and by belief, Defendant Molano had a duty to all other motorists, including infant M.C., to ensure his nephew, Defendant Pineros-Molano abided by the rules of the road.

81.    By information and by belief, Defendant Molano breached these duties and was negligent and grossly negligent and engaged in willful and wanton conduct when he permitted Defendant Pineros-Molano to use the 2016 Toyota Camry for the convenience of driving back to his residence in West Virginia.

82.    Defendant Molano negligently entrusted the Camry to Defendant Pineros-Molano despite knowledge of his history of reckless driving.

EXHIBIT B

83.     Defendant Molano negligently entrusted the Camry to Defendant Pineros-Molano despite knowledge of the lack of liability insurance on the vehicle.

84.     Defendant Molano's negligent and grossly negligent acts were the proximate cause the injuries sustained by Infant M.C.

**COUNT IV – Negligence of Off Lease Motors**

85.     All previous paragraphs are restated and hereby incorporated by reference.

86.     By information and by belief, Defendant Off Lease Motors had a duty to all other motorists, including Infant M.C, to ensure its employees, including Defendant Pineros-Molano, were safe drivers before permitting them to use vehicles belonging to Defendant Off Lease Motors.

87.     By information and by belief, Defendant Off Lease Motors had a duty to all other motorists, including infant M.C., to ensure its employees, including Defendant Pineros-Molano abided by the rules of the road.

88.     By information and by belief, Defendant Off Lease Motors had a duty to not permit employees who had been charged with multiple serious and dangerous traffic offenses to borrow cars for their own convenience.

89.     Defendant Off Lease Motors breached these duties and was negligent and grossly negligent and engaged in willful and wanton conduct when it permitted Defendant Pineros-Molano to use the 2016 Toyota Camry.

90.     Defendant Off Lease Motors's negligent and grossly negligent acts were the proximate cause of the injuries sustained by Infant M.C.

## COUNT V – Alter Ego/Piercing the Corporate Veil

91.     All previous paragraphs are restated and hereby incorporated by reference.

92.     Plaintiff alleges that Defendant Off Lease Motors was at all relevant times the alter ego of Defendant Molano.

93.     By information and by belief, Defendant Molano exercised complete control over Off Lease Motors in respect to the transaction and conduct at issue.

94.     By information and belief, Off Lease Motors failed to observe corporate formalities.

95.     By information and belief, Off Lease Motors was inadequately capitalized.

96.     By information and belief, Defendant Molano commingled personal and corporate assets and used off Lease Motors as a mere instrumentality for his own benefit.

97.     By information and belief, Defendant Molano used Off Lease Motors to perpetrate wrongful acts, including permitting uninsured vehicles to be operated on public roads and shielding himself from liability for negligent hiring, training, and supervision.

98.     By information and by belief, while the 2016 Toyota Camry at issue in this Complaint had a temporary tag and a bill of sale showing it had been sold from Defendant Molano to Defendant Pineros-Molano, the pattern of Defendant Pineros-Molano using multiple vehicles for his own convenience on prior occasions combined with the non-conformance with the laws regarding insurance coverage on the sale of this vehicle prove the 2016 Toyota Camry actually belonged to Defendant Molano or Defendant Off Lease Motors.

EXHIBIT B

99.     By information and by belief, Plaintiff alleges the corporate structure of Defendant Off Lease Motors was abused in such a manner that adherence to the fiction of the separate corporate entity would promote injustice and shield the responsible party, Defendant Molano, from liability.

100.     As a direct and proximate result of the wrongful conduct of Defendant Molano, Infant M.C. suffered serious and significant injuries.

101.     Infant M.C. suffered serious and significant injuries and harm as a result of the motor vehicle collision that was caused by the Defendants, including property damages, medical bills, pain and suffering, emotional distress, loss of enjoyment of life, out of pocket expenses, scarring and disfigurement, loss of household services, and annoyance and inconvenience.

**ROLE OF NOTICE DEFENDANT**

102.     Notice Defendant  will be responsible for any judgment in excess of the bodily injury liability policy of the Defendants, up to the limits of the underinsured motorist policy.

**DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of Infant M.C., demands judgment against the Defendants, to include past and future compensatory damages arising out of the Defendants' negligent acts and omissions, with such damages including, but not limited to, property damage, past and future medical expenses, past and future pain and suffering, past and future emotional distress, annoyance and inconvenience, past and future loss of enjoyment of life, scarring and disfigurement, costs, pre-judgment and post-judgment

EXHIBIT B

interest, reasonable attorney fees, punitive damages, and any other damages as allowable

by law.

<strong>PLAINTIFF DEMANDS A TRIAL BY JURY.</strong>

<u>**Christopher Coderre as Parent and Next Friend of Infant M.C.,**</u>
By counsel

<u>/s/ M. Alexandra Hazel</u>
M. Alexandra Hazel
W. Va. State Bar I.D. No. 13627
SKINNER LAW FIRM
P.O. Box 487
Charles Town, West Virginia 25414
304-521-2204/Fax 304-725-4082